**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ROSLYN HALE** | * | |
| 1621 East 33rd Street | * | |
| Baltimore, Maryland 21218 | * | |
| | * | |
| *Plaintiff*, | * | |
| | * | |
| v. | * | |
| | * | |
| **MAYOR AND CITY COUNCIL** | * | |
| **OF BALTIMORE CITY** | * | |
| *Andre Davis, City Solicitor* | * | |
| City Hall – Room 250 | * | **Civil Case No.:** _____ |
| 100 N. Holliday Street | * | |
| Baltimore, Maryland 21202 | * | *****JURY TRIAL DEMANDED***** |
| | * | |
| and, | * | |
| | * | |
| **FERNANDO MOORE, JR.** | * | |
| *Human Service Manager* | * | |
| Mayor's Office of Human Services | * | |
| 7 East Redwood Street, 5th Floor | * | |
| Baltimore, Maryland 21202 | * | |
| | * | |
| *Defendants*. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT**

Comes now the Plaintiff, by and through undersigned counsel, before this Honorable Court, and sues the above-named Defendants, and in support thereof states as follows:

**INTRODUCTION**

1.  This Complaint stems from employment discrimination and sexual harassment caused by Defendant Fernando Moore, Jr. ("**Defendant Moore**") and Defendant Mayor and City Council of Baltimore City, acting through the Mayor's Office of Human Services ("**Defendant MOHS**"). Over the course of eight months, Defendant Moore, a supervisor at Defendant MOHS,

continually sexually harassed Plaintiff Roslyn Hale ("**Plaintiff**"), his employee, by making sexual advances, threatening unwanted physical touching, and composing a sexually explicit song detailing how he wanted to perform oral sex on her.

2. After suffering Defendant Moore's harassment for eight months, Plaintiff filed a formal complaint about his behavior to Defendant MOHS's human resources department. Defendant MOHS retaliated against Plaintiff for filing the complaint by reassigning her to a less desirable work location on the same day the formal complaint was filed.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Honorable Court under 28 U.S.C. § 1331 as a civil action arising under the Constitution, laws, or treaties of the United States.

4. Supplemental jurisdiction is proper in this Honorable Court under 28 U.S.C. § 1367 for all state law claims in this action, as all claims relate to the same case or controversy.

5. Venue is proper in this Honorable Court under 28 U.S.C. § 1391 as the District of Maryland is the judicial district in which Defendant Moore resides and Defendant MOHS is a municipal entity, and a substantial part of the events at issue in this Complaint took place in Baltimore, Maryland.

6. Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("**EEOC**") and the City of Baltimore Community Relations Commission ("**CRC**") relating to continuous discriminatory conduct spanning from October 1, 2017 to May 31, 2018. The EEOC mailed Plaintiff a Notice of Suit Rights permitting this suit on November 27, 2019. *See* Exhibit A (Notice of Rights). Plaintiff timely filed this suit within 90 days of the EEOC's determination.

**PARTIES**

7.     Plaintiff Roslyn Hale is an adult citizen of Baltimore City, Maryland. At all times relevant to this Complaint, Plaintiff was an employee of the Mayor's Office of Human Services located in Baltimore, Maryland. During the course of her employment Plaintiff was known as Roslyn Smith, which is Plaintiff's maiden name.

8.     Defendant Mayor and City Council of Baltimore City, acting through the Mayor's Office of Human Services ("MOHS"), is a *sui juris* municipal entity in Baltimore, Maryland, headquartered at City Hall – Room 250, 100 North Holliday Street, Baltimore, Maryland 21202.

9.     Defendant Fernando Moore, Jr., upon information and belief, is an adult resident of Baltimore City, Maryland. At all times relevant to this Complaint, Defendant Moore was an employee of the Mayor's Office of Human Services located in Baltimore City, Maryland.

**FACTS**

10.    On or about October 1, 2017, Plaintiff was employed as a Human Service Worker in the Baltimore City Community Action Partnership division of Defendant MOHS. Plaintiff's direct supervisor at all relevant times was Defendant Moore, who was employed as the Human Service Manager. Both Plaintiff and Defendant Moore worked at Defendant MOHS's Northern Community Action Partnership Center, located at 5225 York Road, Baltimore, Maryland 21212 ("**Northern**").

11.    Beginning in October, 2017 and continuing until Plaintiff was reassigned on or about May 31, 2018, Defendant Moore continually sexually harassed Plaintiff. Throughout the eight months of harassment, Defendant Moore constantly made repeated inappropriate and lewd comments and sexual advances, both in person at the office and over text from Defendant Moore's work phone issued by Defendant MOHS.

12. Plaintiff repeatedly and consistently denied Defendant Moore's advances, telling him on multiple occasions that his comments were inappropriate and unwelcome.

13. The text messages Defendant Moore sent to Plaintiff from Defendant Moore's work phone included, but were not limited to, comments that he "misses" Plaintiff and "wants" Plaintiff.

14. Defendant Moore also continually made inappropriate verbal comments to Plaintiff at the office, including, but not limited to, asking Plaintiff "what would you do if I came up behind you and put my hands on your hips?"

15. On another occasion, Defendant Moore had a heated discussion with another colleague in front of Plaintiff, leading Defendant Moore to comment, "all this #metoo stuff is getting out of hand." As part of that conversation, Plaintiff had to explain to Defendant Moore that he could not just put his hands on anyone, despite Defendant Moore's belief that hips were not "sexual organs."

16. On October 14, 2017, Defendant Moore texted Plaintiff that he wrote her a song. When he emailed Plaintiff the song, she discovered that the song was a sexually explicit description of oral sex. The lyrics for the song include, but are not limited to, "I wonder how she tastes, oh I wonder how she feel, … love it when she wears heels, got me head over heels, … I just wanna make it rain, somebody wanna make it wet, stroke it stroke it make a mess."

17. The lyric "I wonder how she tastes" is a reference to oral sex.

18. The lyrics "I wonder how she feel" and "stroke it stroke it" are references to penetrative sex.

19. The lyric "wanna make it wet" is a reference to female sexual arousal.

20. The lyric "make a mess" is a reference to male ejaculation.

21. Additionally, the song lyrics included references to the conversation Plaintiff had with Defendant Moore about his desire to put his hands on her hips.

22. Plaintiff was deeply uncomfortable listening to the song.

23. After months of sexual harassment and Plaintiff repeatedly rejecting his advances, Defendant Moore began to retaliate and discriminate against Plaintiff for rejecting him.

24. Defendant Moore began to micromanage Plaintiff's work, deny Plaintiff's leave requests without justification, and send antagonizing emails to Plaintiff in an attempt to show Plaintiff he was in control.

25. Plaintiff was severely distressed by Defendant Moore's continuous sexual harassment. His conduct made Plaintiff significantly uncomfortable and placed her in fear. She was unable to sleep, developed bad anxiety and depression, and suffered from extreme claustrophobia, to the point that Plaintiff had severe difficulty riding in elevators. Plaintiff was so distressed she was unable to continue doing normal daily activities and consistently suffered from nightmares.

26. Defendant Moore's continuous sexual harassment significantly impacted Plaintiff's ability to do her job, the conditions of Plaintiff's employment, and Plaintiff's professional development. Plaintiff was unable to attend trainings or events held by Defendant MOHS, fearing that Defendant Moore would either be present or would be leading the training session.

27. On or about March 22, 2018, Plaintiff called out 24 hours prior to her scheduled work hours per Defendant MOHS's call-out policy to handle a family emergency. Although Plaintiff followed the relevant policies, Defendant Moore fraudulently misrepresented the time that Plaintiff called out and the reason she requested leave on the call-in sheet records. Defendant

Moore then chose to inappropriately discipline Plaintiff without reason based on his fraudulently created documentation.

28. Upon information and belief, no male coworkers have been singled out for inappropriate discipline by Defendant Moore, despite at least one male colleague being frequently tardy and failing to follow Defendant MOHS's call-out policy.

29. On May 21, 2018, Plaintiff submitted a leave request to Defendant Moore. Defendant Moore denied Plaintiff's request without reason while granting the male colleague's request.

30. Defendant Moore would deny Plaintiff's leave requests for the same reason Defendant Moore would justify granting a male coworker's leave requests.

31. On May 31, 2018, Plaintiff complained about Defendant Moore's sexual harassment to Plaintiff's union and Defendant MOHS's human resources department. Plaintiff's union, AFSCME LOCAL 2202, submitted a formal letter of complaint on Plaintiff's behalf to Lori Cunningham ("**Cunningham**"), a Director of Defendant MOHS.

32. Although the letter was sent to Cunningham in confidence with the expectation that the letter would be forwarded to authorized personnel for review, Cunningham instead inappropriately commenced her own investigation of Plaintiff's sexual harassment complaint.

33. Approximately one week after submitting the formal letter of complaint, Cunningham inappropriately reached out to Plaintiff, requesting a meeting with Plaintiff even though Plaintiff was on leave.

34. During the in-person visit, Cunningham harassed Plaintiff with questions related to her complaint. Plaintiff was deeply uncomfortable with Cunningham's questions, and felt violated, harassed, and disturbed by Defendant MOHS's treatment of Plaintiff's complaint.

35. At the conclusion of the meeting, Cunningham instructed Plaintiff that she was being reassigned to Defendant MOHS's eastern facility ("**Eastern**") while Defendant MOHS investigated Plaintiff's complaint.

36. Upon information and belief, Defendant Moore was not relocated during Defendant MOHS's investigation or otherwise subjected to adverse employment action.

37. Plaintiff was not allowed to return to her office to retrieve her personal belongings, which were left unlocked and unprotected in her previous office. During the time Plaintiff was located at Eastern, Defendant Moore had full access to her prior office and was able to go through her computer and personal belongings. Defendant Moore continued to have access to Plaintiff's belongings until Plaintiff complained to her union, which intervened and required Defendant MOHS to lock Plaintiff's previous office.

38. At the time Plaintiff was relocated, Eastern was the worst office space Defendant MOHS operated.

39. The Eastern office was located at the bottom of an old schoolhouse. While Plaintiff was located at Eastern, she frequently coughed up mucus with black dust due to the poor conditions of the office space. In addition, the office was infested with bugs and mice.

40. While Plaintiff was subjected to the bugs, mice, and black mucus, Defendant Moore was allowed to continue working out of the Northern office, which had none of those issues.

41. When Plaintiff was relocated, it was made clear by Cunningham that the relocation was occurring solely for the purpose of Defendant MOHS's investigation into Plaintiff's complaint.

42. Plaintiff's relocation also interfered with her professional development. During her time at Eastern, positions opened at Northern and Defendant MOHS's southern facility which

7

would have been a promotion for Plaintiff. However, Plaintiff was unable to apply for either position because the nature of Defendant MOHS's hiring process and the responsibilities of the positions meant Plaintiff risked being forced to work closely with Defendant Moore if she was promoted into one of the positions. Plaintiff also risked losing the protections of her union if she was promoted and required to work another probationary period, which Plaintiff feared would result in Defendant Moore's harassment worsening.

43. After several months, Cunningham requested to meet with Plaintiff in-person at Eastern, with a human resources representative present. Cunningham informed Plaintiff that the investigation had been completed, and Plaintiff could return to Northern.

44. When Plaintiff returned to Northern, Defendant Moore was relocated to Eastern. As Defendant MOHS had transferred office spaces during Plaintiff's relocation, Defendant Moore was not subjected to any of the conditions Plaintiff suffered during the time she was located at Eastern.

45. The investigation conducted by Defendant MOHS was insufficient and flawed. Plaintiff provided Defendant MOHS with four female colleagues who had witnessed Defendant Moore's behavior, but Defendant MOHS interviewed only one of those colleagues. The sole outcome of the investigation was that Defendant Moore was suspended for ten days and relocated to Eastern.

46. After the conclusion of the investigation, Defendant MOHS made no effort to ensure that Defendant Moore was kept away from Plaintiff. Many training sessions and other events were held agency-wide and Defendant MOHS took no action to permit Plaintiff to attend these events and trainings without being forced to interact with Defendant Moore. Plaintiff was

forced to use her own leave time to avoid attending events that Defendant Moore was present at and training sessions that Defendant Moore led.

47. Further, Defendant MOHS took no action to ensure that Defendant Moore did not interfere with Plaintiff's professional activities and development. For example, Plaintiff was involved in agency programs such as the Rapid Rehousing Eviction Prevention Program, that Defendant MOHS permitted Defendant Moore to head. As a result, Plaintiff was forced to withdraw her participation in the program to avoid interaction with Defendant Moore.

48. Defendant Moore was not required to take any steps or make any adjustments to reduce interaction with Plaintiff. By contrast, the adjustments that Plaintiff was forced to make limited her professional growth and development.

49. On June 8, 2018, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("**EEOC**"), which was filed as Charge No. 12B-2018-00035. The Charge covered the continuing sexual harassment perpetrated by Defendant Moore, including, but not limited to, inappropriate and lewd comments, sexual advances, and the sexually explicit song.

50. On or about June 11, 2018, Plaintiff simultaneously filed a Charge of Discrimination with the City of Baltimore Community Relations Commission ("**CRC**"), which was filed as File No. 2018-06-041. Plaintiff was later notified that the CRC has a work-sharing agreement with the EEOC, resulting in Plaintiff's CRC complaint being transferred to the EEOC.

51. In the summer of 2019, during the pendency of Plaintiff's Charge of Discrimination, Plaintiff was unable to continue working in the same agency as Defendant Moore, and resigned from her position.

52. On November 27, 2019, the EEOC dismissed Plaintiff's complaint and mailed Plaintiff a Notice of Suit Rights permitting this suit. *See* Exhibit A (Notice of Rights).

## COUNT I
## EQUAL PROTECTION — TITLE VII
**(Against Defendant MOHS)**

53. Plaintiff adopts and incorporates by reference each and every allegation contained in this Complaint verbatim as if fully stated under this Count.

54. It is unlawful for an employer to discriminate against an employee with respect to the employee's employment, limit an employee's employment opportunities, or adversely impact an employee's status, based on the employee's gender. *See* U.S. Const. amend. XIV; 42 U.S.C. § 2000e-2(a)(1) and (2).

55. Plaintiff, a female employee, was treated differently than her similarly-situated male colleagues, based solely on her gender. Plaintiff was singled out as the target of Defendant Moore's sexual harassment due to her gender—upon information and belief, no male employees were subjected to sexual harassment by Defendant Moore.

56. The sexual harassment suffered by Plaintiff included, but was not limited to, receiving a sexually explicit song from Defendant Moore detailing how he wants to perform oral sex and other sexual acts on Plaintiff.

57. Upon information and belief, Defendant Moore did not compose sexually explicit songs for any male employees.

58. There is no rational basis, legitimate state purpose, or important governmental interest in the sexual harassment at issue.

59. Defendant Moore's conduct of continuously harassing Plaintiff over the course of eight months resulted in a hostile, abusive work environment.

60. The abuse suffered by Plaintiff substantially altered the conditions of her employment, as she no longer felt secure and safe in her office. The retaliatory actions taken by Defendant Moore after Plaintiff's continual rejections, and the retaliation by Defendant MOHS after Plaintiff filed a complaint with human resources, seriously impacted Plaintiff's ability to do her job, detracted from her job performance, and resulted in inappropriate, unjustified disciplinary actions.

61. As a result of Defendant Moore and Defendant MOHS's conduct, Plaintiff suffered, and continues to suffer, severe mental anguish as well as physical pain and suffering, in addition to financial and economic damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant MOHS in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus interest, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT II
## RETALIATION — TITLE VII
### (Against Defendant MOHS)

62. Plaintiff adopts and incorporates by reference each and every allegation contained in this Complaint verbatim as if fully stated under this Count.

63. It is unlawful for an employer to discriminate against an employee for making a charge of discrimination or otherwise participating in a discrimination investigation or proceeding. *See* U.S. Const. amend. XIV; 42 U.S.C. § 2000e-3(a).

64. On May 31, 2018, Plaintiff formally complained about Defendant Moore's sexual harassment to AFSCME LOCAL 2202, Plaintiff's union, and the human resources department of Defendant MOHS.

65. AFSCME LOCAL 2202 submitted a formal complaint on Plaintiff's behalf to Defendant MOHS for the purpose of starting a formal investigation into Plaintiff's claim.

66. Rather than permit a formal investigation to commence, Defendant MOHS, through its Director, Cunningham, harassed Plaintiff with inappropriate and unauthorized questioning into Plaintiff's claims.

67. Plaintiff was deeply uncomfortable with Cunningham's inappropriate questioning, and refused to provide any additional statements to Cunningham.

68. Defendant MOHS then relocated Plaintiff to the worst office space Defendant MOHS operated. A possible reassignment was never discussed with Plaintiff prior to her reassignment, and Cunningham informed Plaintiff that the relocation was solely for the purpose of Defendant MOHS's investigation of Plaintiff's complaint. Defendant Moore was never relocated during this time or suffered from any adverse employment action—it was solely Plaintiff who was adversely impacted as a result of her filing a complaint.

69. The space that Plaintiff was transferred to was infested with bugs and mice, and had other significant structural issues that caused Plaintiff to frequently cough up black mucus.

70. In addition, the relocation interfered with Plaintiff's professional development, keeping her from being able to apply for a promotion when two positions opened during the time Plaintiff was located at Eastern.

71. At the time of her relocation, Plaintiff was not allowed to retrieve her personal belongings from her office at Northern. Defendant MOHS left her office unlocked and unattended, permitting Defendant Moore access to Plaintiff's personal belongings and computer.

72. The relocation materially changed the terms, conditions, and status of Plaintiff's employment.

73.     As a result of Defendant MOHS's retaliatory conduct, Plaintiff suffered, and continues to suffer, severe mental anguish as well as physical pain and suffering, in addition to financial and economic damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant MOHS in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus interest, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT III
## EQUAL PROTECTION — MARYLAND DECLARATION OF RIGHTS
**(Against all Defendants)**

74.     Plaintiff adopts and incorporates by reference each and every allegation contained in this Complaint verbatim as if fully stated under this Count.

75.     Plaintiff is entitled to the equal protection of law pursuant to Article 24 and Article 46 of the Maryland Declaration of Rights, which prohibit gender-based discrimination in public employment.

76.     Plaintiff, a female employee, was treated differently than her similarly-situated male colleagues, based solely on her gender. Plaintiff was singled out as the target of Defendant Moore's sexual harassment due to her gender—upon information and belief, no male employees were subjected to sexual harassment by Defendant Moore.

77.     The sexual harassment suffered by Plaintiff included, but was not limited to, receiving a sexually explicit song from Defendant Moore detailing how he wants to perform oral sex and other sexual acts on Plaintiff.

78.     Upon information and belief, Defendant Moore did not compose sexually explicit songs for any male employees.

79. There is no rational basis, legitimate state purpose, or important governmental interest in the sexual harassment at issue.

80. Defendant Moore's conduct of continuously harassing Plaintiff over the course of eight months resulted in a hostile, abusive work environment.

81. The abuse suffered by Plaintiff substantially altered the conditions of her employment, as she no longer felt secure and safe in her office. The retaliatory actions taken by Defendant Moore after Plaintiff's continual rejections, and the retaliation by Defendant MOHS after Plaintiff filed a complaint with human resources, seriously impacted Plaintiff's ability to do her job, detracted from her job performance, and resulted in inappropriate, unjustified disciplinary actions.

82. As Defendant Moore is a public official who violated Plaintiff's rights under the Maryland Constitution, Defendant Moore is personally liable for compensatory damages.

83. As a result of Defendant Moore and Defendant MOHS's conduct, Plaintiff suffered, and continues to suffer, severe mental anguish as well as physical pain and suffering, in addition to financial and economic damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant Moore and Defendant MOHS, jointly and severally, in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus interest, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT IV
## RETALIATION — MARYLAND DECLARATION OF RIGHTS
**(Against Defendant MOHS)**

84. Plaintiff adopts and incorporates by reference each and every allegation contained in this Complaint verbatim as if fully stated under this Count.

85. Plaintiff is entitled to the equal protection of law pursuant to Article 24 and Article 46 of the Maryland Declaration of Rights, which prohibit gender-based discrimination in public employment.

86. On May 31, 2018, Plaintiff formally complained about Defendant Moore's sexual harassment to AFSCME LOCAL 2202, Plaintiff's union, and the human resources department of Defendant MOHS.

87. AFSCME LOCAL 2202 submitted a formal complaint on Plaintiff's behalf to Defendant MOHS for the purpose of starting a formal investigation into Plaintiff's claim.

88. Rather than permit a formal investigation to commence, Defendant MOHS, through its Director, Cunningham, harassed Plaintiff with inappropriate and unauthorized questioning into Plaintiff's claims.

89. Plaintiff was deeply uncomfortable with Cunningham's inappropriate questioning, and refused to provide any additional statements to Cunningham.

90. Defendant MOHS then relocated Plaintiff to the worst office space Defendant MOHS operated. A possible reassignment was never discussed with Plaintiff prior to her reassignment, and Cunningham informed Plaintiff that the relocation was solely for the purpose of Defendant MOHS's investigation of Plaintiff's complaint. Defendant Moore was never relocated during this time or suffered from any adverse employment action—it was solely Plaintiff who was adversely impacted as a result of her filing a complaint.

91. The space that Plaintiff was transferred to was infested with bugs and mice, and had other significant structural issues that caused Plaintiff to frequently cough up black mucus.

92. In addition, the relocation interfered with Plaintiff's professional development, keeping her from being able to apply for a promotion when two positions opened during the time Plaintiff was located at Eastern.

93. At the time of her relocation, Plaintiff was not allowed to retrieve her personal belongings from her office at Northern. Defendant MOHS left her office unlocked and unattended, permitting Defendant Moore access to Plaintiff's personal belongings and computer.

94. The relocation materially changed the terms, conditions, and status of Plaintiff's employment.

95. As a result of Defendant MOHS's retaliatory conduct, Plaintiff suffered, and continues to suffer, severe mental anguish as well as physical pain and suffering, in addition to financial and economic damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant MOHS in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus interest, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

### COUNT V
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Against all Defendants)**

96. Plaintiff adopts and incorporates by reference each and every allegation contained in this Complaint verbatim as if fully stated under this Count.

97. Despite Plaintiff rejecting Defendant Moore's advances multiple times, Defendant Moore intentionally and recklessly continued to sexually harass Plaintiff knowing that his advances were unwelcome and inappropriate.

98. Defendant Moore's conduct included, but was not limited to, continuous sexual advances, a sexually explicit song detailing how he wanted to perform oral sex and other sexual

acts on Plaintiff, and threats of battering Plaintiff by putting his hands on her hips despite Plaintiff clearly telling Defendant Moore his actions were unwelcomed. Defendant Moore's conduct, as a supervisor forcing unwelcome sexual attention on an employee, was extreme and outrageous, and went far beyond the bounds of decency.

99. As a direct result of Defendant Moore's outrageous and intentional conduct, Plaintiff was severely emotionally distressed. Plaintiff was afraid of Defendant Moore to the extent that Plaintiff was unable to further her career by applying for internal promotions for fear that working closer to Defendant Moore would cause his conduct to worsen. Plaintiff was significantly uncomfortable with the sexually explicit song Defendant Moore wrote for her, the comments and advances he made verbally and by text, and the retaliatory actions she faced after her continual rejection of his advances.

100. Plaintiff was unable to sleep, developed severe anxiety and depression, and suffered from extreme claustrophobia to the point that Plaintiff had difficulty riding in elevators. Plaintiff was so distressed she was unable to continue doing normal daily activities and consistently suffered from nightmares.

101. Plaintiff's emotional distress disrupted her daily function, interfered with her ability to do her job, and was far beyond what a reasonable person can be expected to endure in their workplace.

102. As a result of Defendant Moore's intentional infliction of emotional distress on Plaintiff, Plaintiff is entitled to compensatory damages, punitive damages, interests, costs, and attorneys' fees.

103. Defendant MOHS is liable for any judgment against an employee for damages resulting from tortious acts committed by the employee within the scope of the employee's employment. *See* Md. Code, Cts. & Jud. Proc. § 5-303(b)(1).

104. Defendant MOHS had actual or constructive notice of the circumstances giving rise to Plaintiff's injuries as Plaintiff filed a Charge of Discrimination with CRC within a year of being sexually harassed by Defendant Moore. *See* Md. Code, Cts. & Jud. Proc. § 5-304(e).

**WHEREFORE**, Plaintiff demands judgment against Defendant Moore and Defendant MOHS, jointly and severally, in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus interest, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT VI
## NEGLIGENT TRAINING, RETENTION, AND SUPERVISION
### (Against Defendant MOHS)

105. Plaintiff adopts and incorporates by reference each and every allegation contained in this Complaint verbatim as if fully stated under this Count.

106. Prior to October 2017, Defendant MOHS hired Defendant Moore as a Human Service Manager in Defendant MOHS's Community Action Partnership division. At all times relevant to this Complaint, Defendant Moore worked at Defendant MOHS's Northern Community Action Partnership Center, located at 5225 York Road, Baltimore, Maryland 21212.

107. Between October 1, 2017 through May 31, 2018, Defendant Moore sexually harassed Plaintiff verbally at the office and by text message using the phone Defendant Moore was issued by Defendant MOHS.

108. Plaintiff filed a formal complaint about Defendant Moore's sexual harassment to Defendant MOHS on May 31, 2018.

109. Rather than conduct an effective investigation and stop Defendant Moore's heinous conduct, Defendant MOHS performed a cursory, incompetent investigation, interviewing only one out of four witnesses that Plaintiff provided. Defendant MOHS suspended Defendant Moore and relocated Defendant Moore to Eastern, but took no further action to ensure that Defendant Moore could not continue to harass Plaintiff at joint agency trainings and events.

110. As a result, Plaintiff continued to suffer from Defendant Moore's harassment.

111. Defendant MOHS has a duty to use reasonable care in retaining, training, and supervising its employees to ensure that its employees are competent and fit to perform their job duties.

112. Defendant MOHS breached its duty to Plaintiff by failing to conduct proper training on sexual harassment, failing to adequately supervise Defendant Moore to ensure sexual harassment did not occur, failing to proceed with effective disciplinary action against Defendant Moore, and failing to protect Plaintiff from his unwanted and unwelcomed sexual harassment.

113. As a result of Defendant MOHS's breach, Plaintiff suffered, and continues to suffer, severe mental anguish as well as physical pain and suffering, in addition to financial and economic damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant MOHS in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus interest, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## **JURY TRIAL DEMAND**

The Plaintiff demands a jury trial as to all claims so triable.

        Respectfully Submitted,

        HANSEL LAW, P.C.


        /s/
        Cary J. Hansel (Bar No. 14722)
        Cary@hansellaw.com
        2514 North Charles Street
        Baltimore, Maryland 21218
        Phone:   (301) 461-1040
        Fax:     (443) 451-8606
        *Counsel for Plaintiff*