**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **ROSLYN HALE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | **Civil Case No. 20-cv-00503-SAG** |
| | * | |
| **MAYOR AND CITY COUNCIL OF** | * | |
| **BALTIMORE CITY,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Roslyn Hale ("Plaintiff") brings this action against the Mayor and City Council of Baltimore City ("the City"), and Fernando Moore (collectively, "Defendants"), for claims arising from alleged sexual harassment against Plaintiff by Moore while both were employed by the City. ECF 1.  Pending before this Court are Moore's and the City's respective Motions for Summary Judgment, ECF 30, ECF 35, and Defendants' joint Motion to Strike Plaintiff's Supplemental Briefing and for Sanctions, ECF 53.  The issues have been fully briefed, ECF 41, ECF 44, ECF 45, ECF 48, ECF 50, ECF 51, ECF 52, ECF 56, ECF 57, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons stated below, Moore's Motion for Summary Judgment, ECF 30, will be denied as to Count III and granted as to Count V, and the City's Motion for Summary Judgment, ECF 35, will be granted as to all claims.  Defendants' Motion to Strike, ECF 53, will be denied.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The facts described herein are viewed in the light most favorable to Plaintiff as the non-moving party.

In October, 2013, Plaintiff became employed in a temporary, grant-funded position with the Community Action Partnership ("CAP") in the Mayor's Office of Human Services ("MOHS"). ECF 30-1 at 1; ECF 35-1 at 1.  Plaintiff worked at the Eastern District CAP office located on East Chase Street ("Eastern Office"), and was primarily responsible for educating clients on energy conservation, helping them secure funds to pay utility expenses, and providing assistance in other emergency situations.  ECF 35-4 at 41.  Moore was among Plaintiff's colleagues in the Eastern Office.  Moore was not Plaintiff's supervisor at this time, although she "reported [her] stats to him." *Id.*

Plaintiff and Moore enjoyed a congenial, productive working relationship while the two were assigned to the Eastern Office.  Plaintiff described her relationship with Moore during this period as "close," and states that she "viewed him as a younger brother." *Id.* at 42.  Plaintiff discussed her personal life with Moore, and the two occasionally socialized outside work, including going on double-dates with their respective partners at the time. *Id.* at 45, 52.  Plaintiff knew that Moore was an aspiring rap artist who wrote, composed, and performed original songs. ECF 41-2 at 52.  Plaintiff encouraged Moore's musical endeavors, including by previewing and providing feedback on his songs, and referring to him as a "talented dude."[1]  ECF 35-4 at 47-48. Moore emailed Plaintiff three songs while the two were coworkers in the Eastern Office: (1) "Watch them Fall" in April, 2014; (2) "Damn u fine" in September, 2016; and (3) "Oh My Oh

---

[1] In the same comment—posted by Plaintiff on Moore's Facebook in December, 2015—Plaintiff also stated, "love you Fernando Moore."  ECF 35-4 at 47-48.

My" in October, 2016.  ECF 35-13; ECF 44-3 at 65, 80.  Plaintiff recalls enjoying the songs, and responded positively when Moore solicited her opinion on them.  ECF 41-2 at 270-71.  Moore and Plaintiff remained coworkers in the Eastern Office until Plaintiff's position expired in July, 2017. *Id.* at 42-43.

In August, 2017, after her temporary position ended, Plaintiff sought a permanent role with MOHS.  At Plaintiff's request, Moore provided a reference for her, and assisted in assuring her placement at the Northern District CAP center ("Northern Office"), where Moore had been promoted to a supervisory role.  ECF 41-2 at 58; ECF 35-4 at 80-81.  As such, Moore became Plaintiff's direct supervisor in the Northern Office.  Upon her rehiring, Plaintiff attended the City's new employee orientation where she was informed of the City's policies and procedures prohibiting sexual harassment.  ECF 35-4 at 61.  Plaintiff acknowledged receipt of a copy of the City's sexual harassment policy on August 14, 2017.  *Id.*

Plaintiff and Moore's relationship began to deteriorate in or around August, 2017.  Plaintiff alleges five inappropriate occurrences between September and October, 2017, three of which, critically, occurred in whole or in part over text message.[2]  First, while Plaintiff stood near the copy machine in the Northern Office, Moore allegedly approached her and stated, "what would you do if I came up behind you and put my hands on your hips."  *Id.* at 26, 112.  Second, Plaintiff alleges that on several occasions Moore commented approvingly on her attire or appearance.  *Id.* at 113 ("Like if I came into the office and had on heels or a dress, constantly—I won't use the word constantly, but making comments about I look nice or my appearance.").  Third, Moore allegedly texted Plaintiff, "I miss you."  *Id.* at 21, 85.  Fourth, Plaintiff alleges that Moore texted

---

[2] The following incidents are not necessarily described in chronological order as Plaintiff concedes that she has difficulty recalling the exact dates or sequence of the events alleged herein.  *See* ECF 35-4 at 206-09.

her something to the effect of "how much would I have to pay . . . to have sex with [you]." *Id.* at 81. Finally, on October 14, 2017, Moore sent Plaintiff a song recording titled "She Fun," in an email with the subject line "Listen." ECF 35-13 at 5. In relevant part, the song lyrics stated: "I wonder how she tastes, oh, I wonder how she feel, love it when she wears heels, got me head over heels? I just want to make it rain. Nobody going to make it wet, stroke it, stroke it, make a mess." ECF 1 ¶ 16; ECF 44-3 at 69. Plaintiff testified that Moore contemporaneously texted her that the song was written about her. ECF 1 ¶ 16; ECF 35-4 at 112. Plaintiff contends that she deleted all three offending text messages—and her replies to them—from her physical device within an hour of receiving them, ECF 30-4 at 88. Before doing so, however, Plaintiff allegedly showed the text messages to Angela Waddell, *id.* at 20, and captured screen shots of the text messages, which she sent via text to Tanika Bryant, *id.* at 83, 204-05. As discussed in greater detail below, Plaintiff did not provide corroborating documentary evidence as to the existence or contents of the text messages. After these allegedly offensive text messages were sent, Moore's and Plaintiff's subsequent text exchanges appear to be congenial and informal. *See, e.g.*, ECF 30-4 at 242-43 (discussing October 18, 2017 text message from Plaintiff to Moore stating, "Haaaappy [*sic*] birthday! [celebratory emojis] hopefully ur [*sic*] too drunk to read this [emoji].").

Plaintiff alleges that following the incidents in question, Moore "began to micromanage Plaintiff's work, deny Plaintiff's leave requests without justification, and send antagonizing emails to Plaintiff in an attempt to show Plaintiff he was in control." ECF 1 ¶ 24. Plaintiff alleged that in March, 2018, she requested leave more than 24-hours prior to her scheduled shift—in compliance with the City's established leave policies—but that "Moore fraudulently misrepresented the time that Plaintiff called out and the reason she requested leave on the call-in sheet records." *Id.* ¶ 27. As a result, the City categorized Plaintiff's request as an "occasion of

absence." *See* ECF 35-8.  Plaintiff further testified that in addition to the single recorded occasion of absence, Moore created several additional "fake occurrences," which have since disappeared from her employment records.  ECF 35-4 at 117.  Pursuant to the City's attendance policy, a fourth recorded occasion of absence results in disciplinary action, namely, a written reprimand.  ECF 35-9.

On May 31, 2018, Plaintiff submitted a complaint regarding Moore to her union and the MOHS human resources ("HR") department.  ECF 1 ¶ 31.  Plaintiff's union submitted a formal letter of complaint on her behalf to Lori Cunningham, a Director of MOHS, and MOHS initiated an investigation.  *Id.*  Plaintiff refused to cooperate with the City's investigation, and declined multiple requests to meet with MOHS HR officials.  ECF 35-11 at 15-18.  Moore, for his part, fully cooperated with the City's investigation.  During the pendency of the investigation, Plaintiff was transferred from the Northern Office to the Eastern Office.[3]  Plaintiff alleges that the transfer constituted a practical demotion, effectuated in retribution for her complaint.  *See* ECF 44 at 9. Upon being transferred, Plaintiff was allegedly prohibited from retrieving the personal belongings stored in her workspace in the Northern Office; she contends that allowing Moore to retain "unfettered access to her personal belongings further victimized Plaintiff."  *Id.* at 9-10.  Following the conclusion of the City's investigation, Moore received a ten-day suspension for sending inappropriate information to Plaintiff during work hours.  ECF 44-4 at 50-53.  The City also transferred Moore to the Eastern Office, while reassigning Plaintiff back to the Northern Office. ECF 1 ¶ 44.

---

[3] The parties dispute whether the transfer was initiated by Plaintiff's union representative, ECF 35-11 at 14, or by the City through Cunningham, ECF 44 at 9.  For the reasons described below in Section III.B., the dispute is immaterial to this Court's analysis.

Plaintiff alleges that after the conclusion of the investigation, the City did not take reasonable steps to ensure that she could pursue professional advancement without encountering Moore.  According to Plaintiff, the City "failed to inform Plaintiff when Defendant Moore would oversee training programs, which forced Plaintiff to figure it out on her own time to protect herself."  *Id.* at 11.  Plaintiff also contends that she was practically barred from applying for promotions, because any new role would have required her to work closely with Moore.  *Id.* at 12.

Plaintiff alleges that Moore's conduct and the City's ensuing responses caused her severe mental and emotional harm.  She testified that she was forced to take "a lot of leave [] for mental health breaks," but that her performance nonetheless remained excellent and she continued to receive positive reviews from clients and colleagues.  ECF 41-2 at 167-68.  Plaintiff further testified that she saw a therapist at least twice, although she could not recall her therapist's name and did not produce medical records or other documentary or testimonial evidence to corroborate this claim.  *Id.* at 177-78.  Although she had no formal diagnosis, Plaintiff contends that the episode retriggered her claustrophobia.  *Id.* at 178-79 ("I don't know if she diagnosed me as suffering from claustrophobia, but I have it . . . I guess feeling raped emotionally triggered the claustrophobia . . . I'm not a therapist.  I don't know.").  Plaintiff also reported feelings of loss at being deprived a safe and enjoyable work environment.  *Id.* at 164-65 ("I've lost—a place I looked at as family.").  In June, 2018, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and with the City of Baltimore Community Relations Commission ("CRC").  ECF 1 ¶ 49-50.  The EEOC issued Plaintiff a right-to-sue letter on November 27, 2019.  ECF 35-3.

Plaintiff filed this action on February 25, 2020.  ECF 1.  Plaintiff's Complaint includes six claims: (1) that the City infringed upon her constitutional rights of equal protection in violation of

Title VII; (2) that the City retaliated against her for engaging in protected conduct in violation of Title VII; (3) that the Defendants infringed upon her equal protection rights in violation of Articles 24 and 46 of the Maryland Declaration of Rights; (4) that the City retaliated against her in violation of Articles 24 and 46 of the Maryland Declaration of Rights; (5) that all Defendants are liable for intentional infliction of emotional distress; and (6) that the City is liable for negligently training and supervising Moore. *Id.* Defendants each moved for summary judgment as to all claims against them. ECF 30, ECF 35.

Upon review of the parties' motions and replies and responses thereto, this Court ordered additional supplemental briefing detailing: (1) why the relevant text messages (or any evidence corroborating their existence) are absent from the evidentiary record; and (2) what impact, if any, Plaintiff's apparent failure to preserve or produce the text messages in question should have on Defendants' dispositive motions. The parties timely filed responsive supplemental briefing, ECF 50, ECF 51, ECF 52. Plaintiff attached as an exhibit to her submission a billing statement from her cell service provider, T-Mobile, which had been provided by T-Mobile in response to Plaintiff's subpoena, but which had not been produced previously to Defendants. *See* ECF 50-14 (Ex. N., T-Mobile Billing details). She further included an affidavit she executed two days prior, providing details as to her efforts to obtain records of the alleged text messages, ECF 50-2 (Ex. B., Hale Affidavit), and a copy of the City's 2018 report following the investigation into her claims, ECF 50-11 (Ex. K., Investigation Report). Subsequently, Defendants jointly moved to strike Plaintiff's supplemental briefing and for sanctions, ECF 53, which Plaintiff opposed, ECF 56.

## II.   MOTION TO STRIKE AND FOR SANCTIONS

Defendants filed a motion to strike Plaintiff's supplemental briefing regarding the missing text messages.  ECF 53.  As an initial matter, to the extent that Defendants request that Plaintiff's entire supplemental response be stricken, it is procedurally improper.  *Maxtena, Inc. v. Marks*, 2012 WL 113386 (D. Md. Jan. 12, 2012); *see also Muir v. Applied Integrated Techs., Inc.*, DKC-13-0808, 2013 WL 6200178, at *4 (D. Md. Nov. 26, 2013) ("[M]otions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike.").  Defendants provide no basis justifying such relief, nor is it authorized under the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(f) (stating that the court make strike certain, specified materials from a *pleading*) (emphasis added); Fed. R. Civ. P. 7(a) (defining pleadings).

Next, this Court declines to disregard as a sham Plaintiff's affidavit submitted as an exhibit to her supplemental briefing, ECF 50-2.  The sham affidavit doctrine permits courts to disregard a party's affidavit submitted in opposition to summary judgment where such affidavit flatly contradicts the party's own prior sworn testimony.  *Barwick v. Celotex Corp.*, 736 F.2d 946 (4th Cir. 1984); *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806 (1999) ("a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.").  Although this Court agrees that Plaintiff's account regarding the missing texts is convoluted and somewhat murky, it has remained—throughout the pendency of this litigation—consistently so.  In her deposition, Plaintiff averred that she sent screen shots of the text messages to Bryant, ECF 30-4 at 83; that she deleted the text messages shortly after receiving them, *id.* at 88; that her deletion was immaterial because her physical device only

retained text messages for a year, *id.* at 20; that she had requested, but not received, records of the text messages from T-Mobile, *id.* at 196-97, 205; and that she had not attempted to obtain copies of the screen shots from Bryant during the course of this litigation, *id.* at 204-05.   These explanations are consistent with those offered in her recent affidavit.   Moreover, new disclosures in Plaintiff's affidavit—such as her alleged conversation with Bryant in which Bryant detailed her device's text message retention settings—largely supplement, rather than contradict, Plaintiff's earlier testimony.   *See* ECF 50-2 (claiming that "Bryant told me that she had set up her phone to automatically delete text messages after 6 months to a year.").[4]   At most, Plaintiff's new affidavit includes minor inconsistencies regarding her alleged motives for the initial deletion of the text messages.   *Compare* ECF 30-4 at 88 (testifying that she contemporaneously deleted the text messages because she did not want her "current boyfriend at the time to come up to my job and assault [Moore].") *with* ECF 50-2 at 2 (declaring that she deleted the text messages because "I did not want to have to continue seeing those distressing and harassing text messages, and my response to them, on my phone in my text history.").   Simply put, the slight disparities in Plaintiff's new affidavit regarding the emotions that drove her to delete the texts in questions are insufficient to warrant application of the sham affidavit doctrine.   *See Cleveland*, 526 U.S. at 806 (describing the doctrine as applying to "a later affidavit that *flatly contradicts* that party's earlier sworn deposition") (emphasis added).

---

[4] Bryant's alleged statement to Plaintiff is not admissible for proof of the truth of the matter asserted: namely, that Bryant had indeed configured her phone to delete text messages after that period.   It is admissible, however, for prove its effect on the listener, here to contextualize Plaintiff's decision not to attempt to obtain records of the text messages from Bryant during the course of litigation.   *See* Fed. R. Evid. 801(c); *Graves v. Lioi*, 930 F.3d 307, 326 n.15 (4th Cir. 2019) (noting that a statement is not hearsay if admitted to show its effect on the listener).

Finally, Defendants argue that this Court should strike the T-Mobile billing records attached to Plaintiff's supplemental briefing—and all arguments related thereto—due to Plaintiff's undisputed failure to produce such records to Defendants during the course of discovery. *See* ECF 53 at 2. The Federal Rules of Civil Procedure impose an affirmative, continuing obligation upon litigants to provide to other parties "a copy-or a description by category and location-of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii); *see also* Fed. R. Civ. P. 26(e)(1)(A) (stipulating that parties must supplement the disclosure in a timely manner if initial disclosures are incomplete or incorrect). If a party fails to do so, he or she "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed R. Civ. P. 37(e). Plaintiff's proffered explanation falls far short of satisfying the "substantial justification" standard set out in Rule 37(e). *See* ECF 56 at 3 (Asserting that "Plaintiff's counsel discovered the disc on January 27, 2022 and had not realize [*sic*] that additional documents had been received from T-Mobile prior to that date."). Even so, Plaintiff's failure is harmless because the exhibit's principal informational contribution—namely, that Plaintiff and Moore were in frequent communication throughout the relevant time period on both Moore's personal and work phones—was already known to this Court. This Court does not condone Plaintiff's unjustified failure to disclose to her counterparties evidence in support of her claims. In light of the totality of the evidentiary record, however, Plaintiff's belated contribution of her exhibit is both harmless and insufficient to defeat summary judgment on several of her claims.

### III.  MOTIONS FOR SUMMARY JUDGMENT

#### A.  Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of showing that there is no genuine dispute of material facts.  *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)).  If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial.  *Id.*  The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial."  *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)).  The mere existence of a "scintilla of evidence" in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor.  *Id.* at 348 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another."  *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case.  *Id.* at 352.  The non-moving party "must produce competent evidence on each element of [its] claim."  *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671).  If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial."  *Id.* at 352 (quoting *Coleman v. United States*, 369

F. App'x 459, 461 (4th Cir. 2010) (unpublished)).  In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## B. Evidentiary Record

As describe above, upon review of the parties' briefings and evidence submitted in support of and in opposition to Defendants' Motions for Summary Judgment, this Court sought "a definitive explanation as to why the relevant text messages (or any evidence corroborating their existence) are absent from the evidentiary record."  ECF 49 at 1.  Defendants now contend that Plaintiff's conduct warrants sanctions for spoliation.

Plaintiff maintains that she deleted each of the three relevant text messages—which would ultimately form the primary basis of her claims—within an hour of receiving them.  ECF 50-2 ¶ 7.  She did so either because they were so distressing that she could not bear to look at them in her text history, *id.* ¶ 8, or because she feared how her romantic partner might respond if he were to discover them, ECF 30-4 at 88.  She also deleted her responses to the messages.  ECF 50-2 ¶ 8.  At the time she deleted the messages, Plaintiff "had no intentions or plans . . . to file a lawsuit." *Id.* ¶ 10.  At some point in the hour-long window between her receipt and deletion, Plaintiff made screen shots of the messages and texted the screen shots as a photo image to Bryant, who was a coworker at the time.  *Id.* ¶ 9.  During this short window, she also apparently showed the text messages as they appeared on her physical device to Waddell, ECF 30-4 at 20.  After filing her internal complaint with the City in May, 2018, Plaintiff asked Bryant about the screen shots of the text messages that she had texted Bryant in September or October, 2017.  ECF 50-2 ¶ 13.  Bryant

told Plaintiff "that she had set up her phone to automatically delete text messages after 6 months to a year . . . [Plaintiff's] understanding was that the screenshots were automatically deleted from [] Bryant's phone and that she did not retain a copy." *Id.* ¶ 14. Notably, Plaintiff does not aver that the screen shots had actually been automatically deleted from Bryant's phone, or how Plaintiff reached the understanding that they had. This Court observes that Plaintiff's conversation apparently occurred in May 2018, roughly seven months after the screen shots had been sent, and within the lower range of Bryant's "6 months to a year" retention settings; it is therefore entirely possible that they had not yet been automatically deleted. Plaintiff similarly does not explain how she concluded that Bryant had not retained a copy of the images, which could have been stored either in her photo library or on her phone's cloud backup.

Ultimately, Plaintiff filed this action in February, 2020. She contends that, at the time of her filing, she would not have possessed the text messages in any event, because her phone is set to automatically delete text messages "after 6 months to a year." *Id.* ¶ 24 ("Even if I had not deleted them at the time, the text messages would have been automatically deleted from my phone after 6 months to a year."). To make matters worse, at some point prior to the filing of this suit, Plaintiff traded in the physical phone on which she had received the text messages for an upgraded model, and is accordingly no longer in possession of the device. *Id.* ¶ 18. During the course of litigation, Plaintiff contends that she made "extensive and exhaustive efforts to obtain the text messages." ECF 50 at 27. These efforts consisted of subpoenaing T-Mobile, who could not provide substantive content of her text messages; attempting, unsuccessfully, to secure production of texts from Moore's personal phone; and obtaining a complete production of text messages from Moore's work phone, the reliability of which she now cursorily contests. *See* ECF 50 at 24-25. Plaintiff's "exhaustive" efforts notably do not include attempting to obtain the screen shots from

her backup or cloud storage, or inquiring with her cellphone provider as to the possibility of doing so; contacting Bryant to investigate whether the text messages could be recovered from her physical device or photo storage; asking Waddell to execute an affidavit or declaration as to her recollection of the text messages; or securing an affidavit or declaration from Bryant confirming her receipt of the screen shots and knowledge of the text messages.[5]

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  A court's authority to sanction spoliation arises from two sources.  First, Rule 37(e) of the Federal Rules of Civil Procedure provides that where a party fails to take reasonable steps to preserve electronically stored information ("ESI") that cannot be restored or replaced, and it causes prejudice to the opposing party, the court may order measures no greater than necessary to cure the prejudice.  Second, sanctions may be imposed pursuant to a federal court's inherent authority to control the judicial process.  *Goodman v. Praxair Services, Inc.*, 632 F. Supp. 2d 494, 505 (D. Md. 2009).  This Court concludes that at this stage, neither source of authority justifies imposition of spoliation sanctions against Plaintiff.

---

[5] Instead, Plaintiff belatedly submits copies of the City's 2018 Report and Recommendation regarding its investigation of Plaintiff's allegations, which includes notes from its interview with Bryant.  *See* ECF 50-11.  Plaintiff contends that the report is admissible as the record of a regularly conducted activity, Fed. R. Evid. 803(6), and as a public record, Fed. R. Evid. 803(8).  ECF 56 at 10-11.  In order for Bryant's statements contained within the report to be admissible for their truth, however, they too must fall within an exception to the hearsay rule.  *See* Fed. R. Evid. 805.  Plaintiff offers none, and this Court will accordingly not consider evidence of Bryant's statements recorded in the report, ECF 50-11.  This Court further observes, that even if it were to consider Bryant's statements as part of its analysis, they still would not corroborate the content of the two most egregious text messages allegedly sent by Moore.

Plaintiff's destruction of the relevant text messages is not redressable under Rule 37(e).  To warrant sanctions under Rule 37(e), a court must be satisfied that: (1) a party had a duty to preserve ESI; (2) which was lost; (3) due to that party's failure to take reasonable steps to preserve it; and (4) it cannot be restored or replaced through additional discovery.  *Mod. Remodeling, Inc. v. Tripod Holdings*, 2021 WL 3852323, at *5 (D. Md. Aug. 27, 2021) (quoting *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 103 (E.D. Va. 2018)).  A party's duty to preserve evidence is triggered from the moment that litigation is reasonably anticipated.  *Silvestri*, 271 F.3d 583, 591 (4th Cir. 2001).  This reasonable anticipation may arise from a summons, the receipt of a demand letter, a preservation notice, or the filing of an administrative complaint.  *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522 (D. Md. 2010).  Plaintiff argues that when she initially deleted the messages, she "'had no intentions or plans at the time to file a lawsuit or take any type of administrative or legal action,' and she had no reason to anticipate that the text messages would be relevant evidence for future legal action." ECF 50 at 31 (quoting 50-2 ¶ 10).  Rather, Plaintiff contends that she only decided to proceed in litigation because "Defendant Moore continued to harass me and act passively aggressively [*sic*] to me for several months afterwards."  ECF 50-2 ¶ 11.  Despite the City's assertions to the contrary, this City cannot conclude that Plaintiff's duty to preserve evidence relevant to her claim was triggered within an hour of her receipt of the text messages, *see* ECF 52 at 4, nor does relevant caselaw support such a proposition.  *See Mod. Remodeling, Inc.*, 2021 WL 3852323, at *6 (mere possibility of litigation does not trigger duty to preserve); *Sonrai Sys., LLC v. Romano*, 2021 WL 1418405, at *18 (N.D. Ill. Jan. 20, 2021), *report and recommendation adopted*, 2021 WL 1418403 (N.D. Ill. Mar. 18, 2021).  Because Plaintiff was under no duty to

preserve evidence at the time she apparently deleted the text messages in question, curative measures under Rule 37(e) cannot be assessed.

The City also suggests that spoliation sanctions against Plaintiff are appropriate in light of her failure to produce the testimony of Bryant or Waddell, who could potentially corroborate the existence of the alleged text messages.  ECF 52 at 3-4.  A federal court's inherent authority to sanction spoliation extends not just to the destruction of physical evidence, but also to parties that fail to produce the testimony of relevant witnesses.  *Hodge v. Wal-Mart Stores, Inc*., 360 F.3d 446, 450 (4th Cir. 2004) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155-56 (4th Cir. 1995)).  The Fourth Circuit has cautioned, however, that such a sanction is not warranted merely for the failure to produce crucial testimony; rather "the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction."  *Id*. (quoting *Vodusek*, 71 F.3d at 156).  This Court shares the City's frustrations as to Plaintiff's failure to elicit testimony from either Bryant or Waddell, which she insists would be favorable to her claims.  That said, there are insufficient facts at this juncture to conclude that Plaintiff's conduct was willful or accompanied by a culpable mind.  At this stage, therefore spoliation sanctions are inappropriate.

The Court will accordingly decline to impose sanctions against Plaintiff at this juncture, while allowing Defendants to re-raise the issue at a later stage for consideration.  Curative measures, such as jury instructions regarding the duty to preserve relevant evidence, may be warranted at trial.

**C.  Sex Discrimination (Counts I and III)**

In Counts I and III of her Complaint, Plaintiff alleges that she was subjected to a hostile work environment because of her sex in violation of the Equal Protection Clause of the Fourteenth Amendment and Title VII (as to the City), and the Maryland Declaration of Rights (as to all Defendants).  All parties agree that the analytical frameworks applicable to Plaintiff's Title VII, state, and federal constitutional claims are materially indistinguishable.  *See* ECF 30-1 at 16; ECF 44 at 13-14; ECF 35-1 at 11; *accord Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496 (D. Md. 2013); *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994).  As such, this Court will analyze Counts I and III together.

To establish a claim for a sex-based hostile work environment against the City, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . [sex]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer."  *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)).  Similarly, to establish such a claim against Moore, the Plaintiff must demonstrate the first three elements described above.

The City and Moore both contend that Plaintiff's claim fails for insufficient evidence that the alleged conduct is sufficiently severe or pervasive to satisfy the third element; the City additionally argues that Moore's alleged conduct is not imputable to it.  The Court finds only the latter of these two arguments persuasive, and will address each in turn.

### 1.  Severe or Pervasive

All Defendants contend that Plaintiff has not proffered adequate evidence as to the third element of her sex discrimination claims.  ECF 30-1 at 18; ECF 35-1 at 13.  "This standard requires an objectively hostile or abusive environment—one that a reasonable person would find hostile or abusive—as well as the victim's subjective perception that the environment is abusive."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *see also Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003); *Evans v. International Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019) (plaintiff must provide evidence sufficient to show that she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." (quoting *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009))).  In determining whether an environment is objectively hostile, courts must consider all circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 23).  This standard is intended to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Viewing the facts in the light most favorable to Plaintiff, this Court concludes that Plaintiff has created a genuine dispute of material fact as to whether the alleged incidents were so severe or pervasive as to effectuate discriminatory changes in the terms and conditions of her employment.  As an initial matter, this Court considers at least two of Plaintiff's allegations—namely, that Moore texted her that he missed her, ECF 35 at 20; and that he occasionally complimented her appearance—to fall squarely within the category of ordinary workplace tribulations that this

standard was designed to exclude.[6]  *See Faragher*, 524 U.S. at 788.  Plaintiff alleges additional instances of hostile conduct, however, which may be sufficiently severe as to change the terms of her employment.  *See Boyer-Liberto*, 786 F.3d at 277.  First, Plaintiff testified that Moore approached her in her workplace, and asked how she would react if he placed his hands on her hips.  ECF 35-4 at 20.  Second, Plaintiff testified that Moore sent her a text message informing her that a highly graphic and sexually explicit song, which he had sent via email, was written about her.  *See* ECF 35-4 at 112; *see* also ECF 44-3 at 69.  Finally, Plaintiff presented evidence, in the form of her own deposition testimony, that Moore sent her a text message in which he propositioned her for sex in exchange for money.  ECF 35-4 at 81.  This conduct, if proven, may be sufficiently severe to establish a hostile work environment.  *See Hart v. Harbor Ct. Assocs.*, 46 F. Supp. 2d 441, 443 (D. Md. 1999) (persistently asking plaintiff to have sexual intercourse may support a hostile work environment claim); *Stewart v. MTR Gaming Grp., Inc.*, 581 F. App'x 245, 247 (4th Cir. 2014) ("constant inappropriate sexual comments for nearly a year, including propositions for sex" raise genuine dispute of fact as to hostile work environment).  Plaintiff further claims that Moore's conduct interfered with her employment.  *See Boyer-Liberto*, 786 F.3d at 277 (instructing courts to consider whether conduct "unreasonably interferes with an employee's work performance.").  Plaintiff averred that she was forced to take several mental health days to cope with the impacts of the alleged harassment.  ECF 35-4 at 167-68.  She further testified that Moore's conduct caused her to experience feelings of anxiety, grief, and loss.  *Id.* at 164-65 ("The situation caused me so much anxiety.  I've lost—a place I looked at as family.").  In totality, Plaintiff's testimony, taken in the light most favorable to her, suffices to raise a triable issue of fact as to

---

[6] This is particularly so in light of Plaintiff's and Moore's prior familiar, social relationship.

whether Moore's conduct was sufficiently severe or pervasive to alter the conditions of her employment.

Defendants strenuously object to the conclusion that Plaintiff's sworn deposition testimony as to the incidents in question, and her responses to those incidents, are enough to survive summary judgment.  *See* ECF 30-1 at 19 ("The profound inconsistencies and shifting in her own sworn accounts, the total absence of any corroborating evidence, and the straight up contradictions of her accounts by the available documentary evidence render her testimony alone insufficient to create a triable issue of fact.").  As discussed throughout, there is a glaring lack of documentary or testimonial evidence corroborating the existence of the text messages that constitute the substantial basis of Plaintiff's claims.  Even so, testimonial evidence may be admitted to prove the contents of a writing where the originals are lost or destroyed by a proponent not acting in bad faith.  *See, e.g.*, Fed. R. Evid. 1004(1); *Vodusek*, 71 F.3d at 156.  Plaintiff has proffered non-culpable motivations for her destruction of the text messages, ECF 30-4 at 88, ECF 50-2 at 2, which have not been refuted by Defendants.  Her testimony as to the contents of the messages is therefore admissible evidence, the weight and credibility of which is a question for the jury.  Put differently, it is for the jury to assess the credibility of Plaintiff's testimony while weighing the lack of direct or circumstantial evidence corroborating her allegations.  Defendants' assertions that Plaintiff's testimony is contradicted by records of text messages between Moore and Plaintiff showing that the two exchanged seemingly congenial messages after the alleged incidents, and by her statements that her work remained proficient throughout the relevant time period, may ultimately persuade a factfinder that her testimony is not credible.  But it is not the Court's purview on summary judgment to weigh the parties' competing evidentiary showings.  Though Plaintiff may face an uphill battle to convince a jury as to the existence of the text messages, their content, and the effect

20

they had on her psychological well-being, this Court cannot conclude as a matter of law that *no* reasonable jury could find in her favor

Because Plaintiff has proffered evidence sufficient to raise a genuine dispute as to whether Moore's conduct was sufficiently severe or pervasive as to create a hostile work environment, her claims against Moore on Count III survive summary judgment.

### 2. Imputable to Employer

To prevail in her claims against her former employer, though, Plaintiff must further demonstrate that Moore's conduct is imputable to the City. *Boyer-Liberto*, 786 F.3d at 277. Where, as here, the alleged conduct was perpetrated by a plaintiff's supervisor, an employer may be "'subject to vicarious liability to a victimized' subordinate." *Brown v. Perry*, 184 F.3d 388, 395 (4th Cir. 1999) (quoting *Faragher*, 524 U.S. at 777). However, where the alleged conduct does not result in a tangible employment action against the plaintiff, the defending employer may raise an affirmative defense by showing that it: (1) exercised reasonable care to prevent or correct promptly the sexually harassing behavior and; (2) plaintiff unreasonably failed to take advantage of preventive or corrective measures to avoid harm.[7] *Faragher*, 524 U.S. 775, 807-08 (1998). The City must meet its burden by a preponderance of the evidence.

---

[7] Plaintiff, in her briefing, misunderstands the availability of the City's affirmative defense, contending that it is unavailable because Moore suffered a tangible employment action. ECF 44 at 22. To the contrary, the viability of the affirmative defense is contingent on whether Plaintiff herself, not the alleged harasser, suffered an adverse employment action. *See Faragher*, 524 U.S. at 760 ("we can identify a class of cases where, beyond question, more than the mere existence of the employment relation aids in commission of the harassment: *when a supervisor takes a tangible employment action against the subordinate*.") (emphasis added); *see also Brown*, 184 F.3d at 394-95 ("'It would be implausible to interpret agency principles to allow an employer to escape liability' for any such action perpetrated by a supervisor against a subordinate." (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998)).

The City posits that the first element of its affirmative defense is satisfied by evidence that it maintained and enforced a policy prohibiting sexual harassment, of which Plaintiff was aware. In support of its argument, the City provided evidence that Plaintiff executed a form in November, 2013, acknowledging that she had received, and agreed to review, a copy of the City's sexual harassment policy.  ECF 35-6.  The Fourth Circuit has repeatedly affirmed that "[d]istribution of an anti-harassment policy provides 'compelling proof' that the company exercised reasonable care in preventing and promptly correcting sexual harassment."  *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 266 (4th Cir. 2001) (citing *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 182 (4th Cir.1998); *Brown*, 184 F.3d at 396).  A plaintiff may rebut this showing by proof that the "employer adopted or administered an anti-harassment policy in bad faith or that the policy was otherwise defective or dysfunctional."  *Id.* (quoting *Brown*, 184 F.3d at 396).  Plaintiff argues that the City's policy "was ineffective and could not have reasonably prevented Defendant Moore's harassing behavior," but provides no evidence to support this claim.  ECF 44 at 23.  As such, the City satisfies its burden of showing the first element of its affirmative defense.

The City argues that the second element of its defense is satisfied because Plaintiff unreasonably delayed in filing an internal complaint, and refused to participate or cooperate in the City's subsequent investigation thereof.  Plaintiff, for her part, argues that although she "did delay initially filing her complaint, she did so for good reason: she did not believe that Defendant City would act reasonably after receiving her complaint and she hoped that Defendant Moore would apologize and improve his conduct."  ECF 44 at 23.  Plaintiff's argument is inconsistent with the law of this circuit, which maintains that "[a]n employee's subjective belief in the futility of reporting a harasser's behavior is not a reasonable basis for failing to take advantage of any preventive or corrective opportunities provided by the employer."  *Church v. Maryland*, 180 F.

Supp. 2d 708, 737-38 (D. Md. 2002) (plaintiff unreasonably failed to take advantage of complaint procedures where she did not complain of alleged harassment for two-year period before filing EEOC complaint (quoting *Barrett*, 240 F.3d at 268)).   There is no dispute that roughly seven months passed between the alleged conduct in September and October, 2017, and Plaintiff's report to her union in May, 2018.   This delay may, itself, be sufficient to conclude that Plaintiff did not react reasonably.   *See Talamantes v. Berkeley Cty. Sch. Dist.*, 340 F. Supp. 2d 684, 698 (D.S.C. 2004) (six-month delay between conduct and complaint constitutes an unreasonable failure to avail oneself of procedures).   This delay, however, coupled with Plaintiff's rejection of the City's repeated requests to interview her in conjunction with its investigation, is determinative.   *Harper v. City of Jackson Mun. Sch. Dist.*, 149 F. App'x 295, 302 (5th Cir. 2005) (Plaintiff's subjective fear of reprisal does not excuse her unreasonable failure to cooperate in investigation of her harassment complaint).   Plaintiff makes no specific effort to justify her decision to refuse to participate in the City's investigation and such conduct cannot be deemed reasonable.

Because the City has established its right to an affirmative defense as a matter of law, it is entitled to summary judgment on Counts I and III.

### D.  Retaliation (Counts II and IV)

In Counts II and IV of her Complaint, Plaintiff alleges that the City unlawfully retaliated against her.   The parties agree that identical analysis applies to Plaintiff's claims under both Title VII (Count II) and the Maryland Declaration of Rights (Count IV).   Retaliation requires evidence "(1) that [plaintiff] engaged in a protected activity, (2) that the employer took a materially adverse action against [plaintiff] and (3) [that] there is a causal connection between the protected activity and the adverse action."   *Perkins v. Intern. Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019).   The

City does not dispute that Plaintiff engaged in protected activity, but argues that she cannot establish that she suffered any materially adverse employment action.

Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006); *see also Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) ("Title VII does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" (internal quotations omitted)). With respect to the second element, therefore, Plaintiff must produce evidence sufficient for a reasonable jury to conclude that the action the City took would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Perkins*, 936 F.3d at 213 (quoting *Burlington*, 548 U.S. at 68). A plaintiff typically satisfies the second element upon an evidentiary showing of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). By contrast, courts in this district have concluded that "none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee 'AWOL'; or issuing a personal improvement plan, 'an Attendance Warning,' a verbal reprimand, 'a formal letter of reprimand,' or 'a proposed termination.'" *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D. Md. 2013); *see also Staggers v. Becerra*, 2021 WL 5989212, at *21 (D. Md. Dec. 17, 2021); *Draughn v. Wormuth*, 2021 WL 5742236, at *8 (D. Md. Dec. 1, 2021).

Plaintiff has identified three actions she contends were adverse: (1) her transfer to the Eastern Office during the City's investigation; (2) the "City's seizure of Plaintiff's personal belongings;" and (3) the City's failure to ensure her access to training, promotional, and

advancement opportunities.  ECF 44 at 25.  On the present record, however, none of the alleged actions can serve as the basis for a viable retaliation claim.  This Court will address each in turn.

First, Plaintiff alleges that the City, through Cunningham, transferred her to the Eastern Office shortly after the filing of her internal complaint.  *Id.*  "This transfer meant that Plaintiff had to work at a location that was uncomfortable and undesirable, and Plaintiff was demoted from having her own separate office to having a cubicle."  *Id.*  Even assuming that the transfer was effectuated at the City's request and not at the request of Plaintiff's union representative, *see* ECF 48 at 7 (citing ECF 36 at 12), it does not constitute an adverse employment action.  *See Norloff v. Virginia*, 51 F. Supp. 2d 699, 702 (E.D. Va. 1998) (plaintiff's transfer to a different work location is not an adverse employment action); *Wonasue*, 984 F. Supp. at 492 (listing "moving an employee to an inferior office or eliminating the employee's work station" as among the actions that are not materially adverse).  Plaintiff's subjective distaste for her new work station and location does not render these developments materially adverse.

Plaintiff's remaining instances of retaliatory conduct are fatally vague.  Plaintiff alleges that she "was denied access to her personal belongings that were in her old office . . . Plaintiff asked Defendant City to secure her belongings at the very least so that Defendant Moore, her harasser, could not freely access them.  Defendant City refused to do so and refused to permit Plaintiff to retrieve her belongings for months on end."  ECF 44 at 25.  Despite leveling this claim, Plaintiff has not identified the individuals who effected this alleged seizure; detailed the time period over which it occurred; explained how the City allegedly informed her of this development; or detailed the City's proffered reasons for retaining her belongings.  Simply put, even viewing the facts in the light most favorable to her, Plaintiff fails to adduce sufficient evidence to allow this Court to evaluate whether this incident constituted a materially adverse action or was

attributable to the City.  Similarly, Plaintiff finally contends that the City denied her access to professional opportunities.  ECF 44 at 26 ("Defendant City made no attempt at all to ensure that Plaintiff would still have access to employment benefits and advancement opportunities that would help further Plaintiff's career.").  This Court does not deny that reduced opportunities for promotion can constitute an adverse employment action.  *See Boone*, 178 F.3d at 255.  Even so, Plaintiff's third proposed basis for retaliation also lacks evidentiary support.  Because Plaintiff has not provided evidence of any particular position or training opportunity that was of interest to her, that she sought, or that was denied to her, she cannot rely on any alleged denial as the basis for her retaliation claims.  *See* ECF 48 at 7.  In sum, at this stage of proceedings where an evidentiary showing is required, Plaintiff's vague and imprecise allegations cannot salvage her retaliation claims.  As such, the City is entitled to summary judgment on Counts II and IV.

## E.  Intentional Infliction of Emotional Distress (Count V)

In Count V, Plaintiff asserts a claim for intentional infliction of emotional distress under Maryland law against all Defendants.  ECF 1 ¶¶ 96-104.  The elements of such a claim are: (1) that the conduct in question was intentional or reckless; (2) that the conduct was extreme and outrageous; (3) that there was a causal connection between the conduct and the emotional distress; and (4) that the emotional distress was severe.  *See Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 614 (1977).

Under Maryland law, "the tort of intentional infliction of emotional distress is rarely viable."  *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 247 (D. Md. 1997).  A plaintiff must plead and prove each element with specificity.  *See Foor v. Juvenile Serv. Admin.*, 78 Md. App. 151, 552 A.2d 947, 956 (1989) ("bald and conclusory allegations will not suffice").  Intentional infliction of emotional distress is not a tort to be widely invoked.  In fact, Maryland courts have cautioned

that the tort of intentional infliction of emotional distress should be imposed sparingly, and "its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Figueiredo–Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69, 75 (1991) (citations omitted); *see also Solis v. Prince George's County*, 153 F. Supp. 2d 793, 804-08 (D. Md. 2001).  Moreover, even demonstrating a defendant's intent to cause emotional distress is insufficient.  "If a defendant intends to cause a plaintiff emotional distress and succeeds in doing so, the defendant is nonetheless *not* liable unless his or her conduct is also extreme and outrageous." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670-71 (1992) (emphasis in original) (internal citations omitted).  Liability accrues only "for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.  The requirements of the rule are rigorous, and difficult to satisfy." *Id.* at 670 (internal citations omitted).

Plaintiff fails to provide sufficient evidence as to the second and fourth essential elements of a claim for intentional infliction of emotional distress.  In Section III.C. *supra*, this Court concluded that a reasonable jury could find that a person in plaintiff's position might find Moore's conduct to be so hostile or abusive as to change the terms of her employment.  However, courts in this district have repeatedly concluded that "[a]s inappropriate and repulsive as workplace harassment is, such execrable behavior almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law." *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002).  Conduct that is "fairly typical in workplace-harassment situations," therefore, is unlikely to satisfy the threshold of intentional infliction of emotional distress.  *Cuffee v. Verizon Commc'ns, Inc.*, 755 F. Supp. 2d

672, 680 (D. Md. 2010) (dismissing claim for intentional infliction of emotional distress where plaintiff alleged that one supervisor "subjected" her to "sexual advances" for five months, another impregnated her then cut off contact, and company transferred and demoted her). In light of the corpus of caselaw concluding that cases "involv[ing] physical invasions of the person of the plaintiff or other truly repugnant intrusions on personal dignity," do not clear the dispositive motion stage, this court concludes that Plaintiff's claims are insufficient to survive summary judgment on Count VI. *Arbabi*, 205 F. Supp. 2d at 466 (collecting cases). Furthermore, Plaintiff has not adequately demonstrated severe emotional distress. This element is satisfied by showing that a plaintiff endured a "'severely disabling emotional response,' so acute that 'no reasonable man could be expected to endure it.'" *Moniodis v. Cook*, 64 Md. App. 1, 15 (Md. Ct. Spec. App. 1985), *superseded by statute on other grounds as stated in Weathersby v. Ky. Fried Chicken Nat'l Mgmt. Co.*, 86 Md. App. 533, 587 (Md. Ct. Spec. App. 1991). Here, Plaintiff provided deposition testimony in which she reports feeling a loss of control, and states that she was diagnosed with anxiety by a therapist whose name she could not recall, and whom she "only saw [] a few times."[8] ECF 41-2 at 177-78. Plaintiff's evidence does not indicate that "she was emotionally unable, even temporarily, to carry on to some degree with the daily routine of her life," as is required to prevail under this tort. *Moniodis*, 64 Md. App. at 15-16

---

[8] The City argues in its reply brief that Plaintiff's testimony as to her medical diagnosis is inadmissible. ECF 48 at 4 ("Plaintiff's claim that her therapist diagnosed her as suffering from anxiety and claustrophobia constitutes inadmissible hearsay."). The City is correct that "on a motion for summary judgment, the court may only consider evidence that is admissible." *Major v. CSX Tansp.*, 278 F. Supp. 2d 597, 604 (D. Md. 2003). This Court agrees that the unnamed therapist's assertion that Plaintiff suffers from anxiety constitutes an out-of-court statement (by the therapist) offered as evidence to prove the truth of the matter asserted (that the Plaintiff is under emotional distress). *See* Fed. R. Evid. 801. As such, the statement in its current form would be inadmissible unless it falls within an established exception. *See* Fed. R. Evid. 802, 803. While declining to make any specific evidentiary hearing at this stage, however, this Court concludes that Plaintiff's evidence as to this element would fall short even if her diagnosis were to be credited.

Because Plaintiff failed to produce evidence as to the second and fourth elements of her claim for intentional infliction of emotional distress, Defendants are entitled to summary judgment on Count V.

### F. Negligent Training and Supervision (Count VI)

Finally, in Count VI, Plaintiff claims that the City is liable for its negligent training and supervision of Moore.  "In order to prove a cause of action for either negligent hiring, supervision or retention, the Plaintiff must establish that her injury was caused by the tortious conduct of a coworker, that the employer knew or should have known by the exercise of diligence and reasonable care that the coworker was capable of inflicting harm of some type, that the employer failed to use proper care in selecting, supervising or retaining that employee, and that the employer's breach of its duty was the proximate cause of the Plaintiff's injuries." *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996) (citing *Evans v. Morsell*, 284 Md. 160, 164 (1978)).

The parties agree that Plaintiff's claim for negligent hiring, retention, and supervision is contingent on the survival of her claim for intentional infliction of emotional distress against Moore.  *See* ECF 44 at 35.  "[I]t is well established that Title VII violations do not qualify as tortious conduct for the purposes of claims of negligent hiring, training, retention, or supervision, because these claims must be based on common law injuries." *Russell v. Russel Motor Cars Inc.*, 28 F. Supp. 3d 414, 419-20 (D. Md. 2014) (quoting *Brown v. The Marjack Co., Inc.*, 2010 WL 419389, at *6 (D. Md. Jan. 29, 2010)).  In light of this Court's determination that Defendants are entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress— the predicate tort on which her negligent supervision claim depends—the City is also entitled to summary judgment on Count VI.

**IV.   CONCLUSION**

For the reasons set forth above, Defendants' Joint Motion to Strike, ECF 53, is DENIED.

Moore's Motion for Summary Judgment, ECF 30, is DENIED as to Count III and GRANTED as

to Count V; and the City's Motion for Summary Judgment, ECF 35, is GRANTED as to all claims.

A separate Order follows.


Dated:  February 8, 2022                                    _____/s/_____

                                                           Stephanie A. Gallagher
                                                           United States District Judge